IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THADDEUS RHODES,<br><br>    Defendant. | CASE NO. 1:19-CR-0073-AT-LTW |

## FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on Defendant Thaddeus Rhodes's ("Defendant") Motion to Suppress Evidence Obtained from Cell Tower Dumps (the "Motion"). (Doc. 37); see also (Doc. 43). The Government has filed a Response in Opposition to Defendant's motion (Doc. 45), and Defendant filed his Reply. (Doc. 53). For the reasons outlined below, the Court **RECOMMENDS** that the Motion be **DENIED**. (Doc. 37); (Doc. 43).

## BACKGROUND

On February 19, 2019, a grand jury in the Northern District of Georgia returned a sixteen count Indictment ("Indictment") charging Defendant with nine counts of Hobbs Act armed robbery, in violation of 18 U.S.C. § 1951, and seven counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). (Doc. 1). In

his Motion, Defendant seeks to suppress "information from 12 cell towers located near 12 locations of robberies" that the Government used to identify Defendant as a suspect. (Doc. 43, at 1).

On or about August 3, 2018, the Government filed an Application for an Order pursuant to 18 U.S.C. § 2703(d). (Doc. 44-1, at 11). In the Application, the Government describes a slew of armed robberies that occurred in Gwinnett, Henry, and Cobb Counties and all appeared to involve the same suspect. (Id. at 13–17). The Government explained that "it is common for individuals who possess cell phones to keep their phones on their person or in their car," including when committing crimes. (Id. at 18). Individuals planning robberies commonly use their cell phones "to communicate with each other, organize, and conduct research." (Id.). In particular, "persons involved in robbing multiple locations often utilize the GPS function on their smartphones to aid them in mapping out routes to the locations to be robbed and routes to use in escaping from the robbery." (Id.). Based on this information, agents with the Federal Bureau of Investigation ("FBI") advised that the cell tower records sought by the Government would be likely to assist in the identification of a suspect. (Id.).

The Government sought information from twelve cell towers during specific periods of time on particular dates that corresponded with the dates, times, and

locations of the robberies.  See (id. at 21–22).  The Government requested (a) identifiers for wireless devices that connected with the towers; (b) the telephone numbers those devices communicated with during the specified times; (c) the date, time, and duration of those communications; (d) the sector or part of the tower that the wireless device connected with; and (e) "the type of communication transmitted through the tower (such as phone call or text message)."  (Id. at 23–24).  Finding that the Government had "offered specific and articulable facts showing that there are reasonable grounds to believe that the records" were relevant and material to the ongoing criminal investigation, the Court granted the Application and issued an Order pursuant to § 2703(d).  (Id. at 2–4).  Defendant's cell phone was located on several tower dumps, eventually leading to his arrest and indictment in this case.  See (Doc. 53 at 2–3).

## DEFENDANT'S MOTION TO SUPPRESS

Relying on Carpenter v. United States,[1] Defendant argues that the cell site location information ("CSLI") obtained by the Government can only be obtained by a warrant, not an order under § 2703(d).  (Doc. 43, at 3–4).  Defendant further contends that the information sought was overbroad because it included "a vast amount of private

---

[1] 138 S. Ct. 2206 (2018).

information . . . about individuals who were in no way suspected of criminal activity." (Id. at 5–6).

As the Government points out, Carpenter is easily distinguishable because the information at issue in that case was "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." (Doc. 45 at 2) (quoting Carpenter, 138 S. Ct. at 2220). The Supreme Court described its decision as "a narrow one" and explicitly stated that it expressed no view on the issue of "real-time CSLI or 'tower dumps.'" Carpenter, 138 S. Ct. at 2220. Since Carpenter, the Seventh Circuit has rejected exact argument raised by Defendant. See United States v. Adkinson, 916 F.3d 605, 611 (7th Cir.), cert. denied, 139 S. Ct. 2762, 204 L. Ed. 2d 1146 (2019) (holding that Carpenter "did not invalidate warrantless tower dumps (which identified phones near *one location* (the victim stores) at *one time* (during the robberies)) because the Supreme Court declined to rule that these dumps were searches requiring warrants") (emphasis in original). Defendant fails to cite a single case—and the Court has found none—holding that Carpenter applies to tower dumps.[2]

---

[2] The only other case Defendant relies on is In re Search of Cellular Tel. Towers, 945 F. Supp. 2d 769, 769 (S.D. Tex. 2013), a non-binding, unpersuasive decision issued over five years before Carpenter. See (Docs. 37, 43, 53).

In his Reply, Defendant acknowledges that "Carpenter addressed only historical cell site data" for a particular phone number. (Doc. 53, at 1). But, Defendant argues, "there is no logical justification for providing less protection for the data of hundreds or thousands of innocent passersby than that for a specific suspect." (Id. at 2). Defendant's argument is misplaced. A surveillance camera might reveal data about the location of "hundreds or thousands of innocent passersby" like the tower dumps at issue here. But there can be no serious question that Carpenter did not invalidate the warrantless use of stationary video surveillance. See United States v. Kelly, 385 F. Supp. 3d 721, 726–29 (E.D. Wis. 2019). Carpenter says nothing about the number of people whose data is being collected. Instead, Carpenter focuses on "the unique nature of cell phone location information" to justify its holding. 138 S. Ct. at 2220.

Looking at the information revealed by the tower dumps, it does not present the Fourth Amendment concerns present in Carpenter. Defendant suggests the tower dump was overbroad because the Government "made no showing of why it needed to know if the people connected to the tower were calling someone, being called or were sending or receiving text messages." (Doc. 43, at 5). But long-standing Supreme Court precedent holds that a person has no protected privacy interest in records of telephone records dialed. Smith v. Maryland, 442 U.S. 735, 745–46 (1979). In Carpenter, the

Supreme Court specifically refused to disturb the holding of Smith. Carpenter, 138 S. Ct. at 2220. Nor did the Government need a warrant to obtain information regarding "the subscriber (and possible user) of a cell phone." United States v. Jenkins, No. 1:18-CR-00181, 2019 WL 1568154, at *4 (N.D. Ga. Apr. 11, 2019).

Otherwise, the cell site information collected by the Government here merely showed "the location at which a device accesse[d]" a cellular network at a particular time. See id. (holding that Carpenter does not require a warrant for IP address information). The information is necessarily limited by the physical location of each particular tower. It did not track Defendant's movement with nearly "GPS-level precision" over an extended period of time like the information in Carpenter. See 138 S. Ct. at 2219. Because the information obtained by the Government in this case does not implicate the kinds of privacy concerns present in Carpenter, and because Defendant cites to no other binding authority holding that a warrantless tower dump violates the Fourth Amendment, the Court concludes that the § 2703(d) Order was a valid mechanism for the Government to obtain the information at issue.

Defendant's final argument is that the Government failed to show a "nexus between the robber and a phone" because there is no evidence any of the victims saw a cell phone on the robber. (Doc. 43, at 5–6); (Doc. 53 at 2). But Defendant fails to

cite any legal authority suggesting such a showing is necessary to receive an Order under § 2703(d).[3]  That section only required the Government to present "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).

Additionally, the Application stated that "it is common for individuals who possess cell phones to keep their phones no their person."  (Doc. 44-1, at 18).  Nowadays, the validity of that statement can hardly be questioned.  The Application then explained that FBI agents advised the Government that individuals planning robberies commonly use their cell phones "to communicate with each other" and when persons rob multiple locations they "often utilize the GPS function on their smartphones to aid them in mapping out routes to the locations to be robbed and routes to use in escaping from the robbery."  (Id.).  Defendant calls these "conclusory statements, without any characterization of how often cell tower dumps lead to

---

[3] As the Government points out, Defendant appears to be assuming that the § 2703(d) Order needed to be justified by probable cause.  (Doc. 45, at 5).  But since the Court has held "a search warrant is not required to obtain cell tower dump evidence, probable cause is not required."  See (id.).  As such, the Court applies the requirements found in § 2703(d) itself.

identification of suspects or how often apprehended suspects have cell phones." (Doc. 43, at 2). Defendant, however, cites no authority holding that the Government is required to present the kind of detailed statistical information he demands. See (Docs. 37, 43, 53). The Government explained that such behavior "is common" and stated that FBI agents advised the information sought was "likely relevant and material" to their investigation. (Doc. 44-1, at 18).

Section 2703(d) is clear and does not require the level of specificity Defendant demands. The Government was only required to present "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). It did just that. See (Doc. 44-1). For each of the foregoing reasons, Defendant's Motion should be **DENIED**.[4]

---

[4] Although the issue is not fully briefed, the Court notes that the good faith exception set out in United States v. Leon, 468 U.S. 897, (1984) would likely apply. In Joyner v. United States, 899 F.3d 1199 (11th Cir. 2018), the Eleventh Circuit found that suppression of CSLI obtained by court order was not required because the Leon exception applied. To be sure, Joyner dealt with an order issued pre-Carpenter, and the Application in this case was submitted just over a month after Carpenter. Joyner, 899

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Evidence Obtained from Cell Tower Dumps be **DENIED**. (Doc. 37); see also (Doc. 43). **IT IS FURTHER ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.[5]

**SO ORDERED, REPORTED, AND RECOMMENDED**, this  16  day of June, 2020.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

F.3d at 1205; (Doc. 44-1). But as Defendant concedes Carpenter explicitly did not address the kind of information sought in the Application. See (Doc. 53, at 1); see also Carpenter, 138 S. Ct. at 2220. At the time the Application was filed, no authority held that Carpenter applied to tower dumps. Thus, the reasoning of Joyner applies with equal force to this case. The Government complied with the requirements of § 2703(d) in obtaining the Order and when it did so that warrantless procedure comported with Eleventh Circuit precedent. See Joyner, 899 F.3d at 1204-05. As such, the Leon exception would likely apply, and Defendant's Motion would still be denied. See Joyner, 899 F.3d at 1205.

[5] The undersigned notes that Defendant has also filed a Motion to Suppress Statements. (Doc. 36). In accordance with the Court's standard procedure, the undersigned defers ruling on that motion so the District Judge can conduct a hearing pursuant to Jackson v. Denno, 378 U.S. 368, (1984) to determine whether Defendant's statements should be suppressed.